# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| STEVE H. EZZARD, | : | PRISONER CIVIL RIGHTS |
| GDC No. 435423, | : | 42 U.S.C. § 1983 |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-CV-2373-SCJ-JSA |
| BRIAN OWENS, Commissioner, | : | |
| Georgia Department of | : | |
| Corrections; STATE OF | : | |
| GEORGIA; DR. AJIBADE, | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Before the Court is *pro se* Plaintiff Steve H. Ezzard's civil rights action filed pursuant to 42 U.S.C. § 1983. Because Plaintiff has failed to state claims against the only Defendants who reside in the Northern District, as discussed below, this action should be transferred to the Southern District of Georgia.

Plaintiff has sued Governor Nathan Deal, Georgia Department of Corrections ("GDC") Commissioner Brian Owens, and the following people from Johnson State Prison: Warden Brad Hooks, Deputy Warden Cherie Price, Dr. Ajibade, Unit Manager James Jackson, and Internal Affairs Manager Lisa Fountain.

The Court first notes that Plaintiff filed the original complaint on July 23, 2014, and included the State of Georgia and Commissioner Owens as Defendants; however, he did not provide any allegations that would indicate what acts he claimed either party committed that violated his constitutional rights. (Doc. 2). Based partly on this deficiency, this Court entered an Order on July 30, 2014, instructing Plaintiff to, *inter alia*, amend the complaint to include a concise statement of his claims, the name(s) of the individual(s) or entities he contends are liable to him as to each claim, the factual allegations supporting his claim(s), the relief he seeks, and the steps he has taken to exhaust his administrative remedies. (Doc. 2). The Court noted that if Plaintiff did not connect the State of Georgia and/or Commissioner Owens to the events about which Plaintiff complains, venue may not be proper in this Court. (Doc. 2).

Plaintiff filed an amended complaint on August 29, 2014; however, the amended complaint did not comply with this Court's previous instructions, because although he again named Commissioner Brian Owens and added Governor Nathan Deal as Defendants, he still did not include those persons in any of the details of the amended complaint and/or how they allegedly violated his constitutional rights. (Docs. 4, 6). On September 12, 2014, the Court provided

2

Plaintiff with one more chance to comply with its instructions; *i.e.,* to provide details regarding how Commissioner Owens and Governor Deal are connected to the events about which he complains. (Doc. 6). The Court again noted that if Plaintiff did not provide any such details, venue may not be proper in this Court. (*Id.*). The matter is now before the Court on Plaintiff's second amended complaint. (Doc. 7).

Plaintiff complains that all Defendants knew that he has needed a knee replacement, leg straightening, and two hernia operations in the last six years, that his injuries are so significant that he has lost function of his leg, that his leg has burst open and seeped blood, and that despite knowing that his medical issues are serious, Defendants continue to bandage Plaintiff's leg, leaving him in serious pain. Plaintiff further complains that Warden Brad Hooks refuses to send him to an adequate outside medical facility based on the expenses and budget restraints. Plaintiff seeks monetary damages and release via a "medical reprieve."

Although Plaintiff generally refers to Defendants as a whole, he does not specify or allege any facts showing that Governor Deal or Commissioner Owens knew about or participated in these specific medical treatment decisions. Indeed, of all of the supervisory officials Plaintiff includes in the amended complaint –

3

Governor Deal, Commissioner Owens, Warden Hooks, Deputy Warden Price, Unit Manager Jackson, and Internal Affairs Manager Fountain – the only supervisory official against whom he potentially has alleged sufficient allegations is Warden Hooks. Plaintiff has failed to state a plausible claim against the remaining supervisory Defendants, including those allegedly located here in the Northern District of Georgia.

Supervisors cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Simpson v. Stewart*, 386 F. App'x 859, 860 (11th Cir. 2010) (citations omitted). Instead, a supervisor is liable only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Chatham v. Adcock*, 334 F. App'x 281, 285-86 (11th Cir. 2009) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). A causal connection is established when: (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation and failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; or (3) the supervisor directed the subordinate to act unlawfully and/or failed to stop the unlawful action. *Id.*; *White v. Thompson*,

4

299 F. App'x 930, 933 (11th Cir. 2008). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez v. Reno*, 325 F3d 1228, 1234 (11th Cir. 2003).

Here, Plaintiff does not allege that any of these supervisory Defendants personally participated in any of the alleged instances where Plaintiff was denied adequate medical care for his injuries to his knee and leg and/or his hernias. Nor does Plaintiff allege a widespread history of abuse that has put these Defendants on notice of a constitutional deprivation regarding his medical care. Instead, Plaintiff merely alleges in a conclusory manner that these Defendants have "implimented [sic] defacto policies" and have failed to properly screen, hire, supervise, and discipline employees "engaged in tortourous [sic] conduct not to care and treat" Plaintiff for his serious medical needs. (Doc. 1 at 4-5). Plaintiff does not identify any particular State of Georgia or GDC policy or custom that allegedly has caused his inadequate care, other than the fact that the Warden, Defendant Hooks, has denied him the necessary treatment due to costs and budget restraints. His conclusory allegations regarding the policies of the supervisory Defendants other than Defendant Hooks, and/or the failure to train or supervise GDC employees, however, are insufficient to state a § 1983 claim against them.

5

*See Fulwood v. Federal Bureau of Prisons*, 568 F. App'x 753, 756 (11th Cir. 2014) ("In civil rights . . . actions, conclusory, vague and general allegations may justify the complaint's dismissal."); *American Federation of Labor and Congress of Indus. Organizations v. City of Miami, Fla.*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (stating that in order for a municipality to be held liable for deliberate indifference under § 1983 for an alleged policy or custom of inadequately training or supervising its employees, the municipality must be "aware of the need to train or supervise its employees in a particular area"); *Craig v. Medlin*, No. CV 313-024, 2013 WL 4078285, at *5 (S.D. Ga. Aug. 12, 2013) (stating that although the plaintiff alleged that supervisory defendants, including the medical department of the prison and GDC Commissioner Brian Owens, had "policies" that caused violations of his constitutional rights, his conclusory allegations of using the label "policy" without any allegations that support the existence of such a policy on the part of the supervisory officials "are merely thinly veiled attempts to hold" those officials liable under a *respondeat superior* theory); *Stone v. Owens*, No. CV 312-091, 2013 WL 1288714, at *6 (S.D. Ga. Mar. 7, 2013) (holding that the plaintiff's conclusory allegations that Commissioner Owens and another supervisory official had "purposely developed inadequate prison policies" including a general "policy

6

of deliberate indifference" to serious medical and dental needs, were inadequate to demonstrate that supervisory liability should attach); *McDaniel v. Yearwood*, No. 2:11-CV-165-RWS, 2012 WL 526078, at *16 (N.D. Ga. Feb. 16, 2012) (holding that the plaintiff failed to establish supervisory liability on the part of the sheriff, because "while Plaintiff makes vague and conclusory allegations of failure to train and supervise," Plaintiff failed to allege facts as to "what training or supervision the deputies did receive, if any, or what training or supervision was lacking and needed" and/or that the sheriff knew of a need for further training and supervision).

Because Defendant Deal and Defendant Owens are the only Defendants that may reside in the Northern District, and because the Johnson State Prison is located in the Southern District of Georgia and that district is where Plaintiff's claims arose and the remaining Defendants reside, Plaintiff's remaining claims against the remaining Defendants should be transferred to the Southern District as the more appropriate venue. *See* 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the general interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]"); *see Nalls v. Coleman Low Federal Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011)

7

(affirming District Court's *sua sponte* transfer of a prisoner case under § 1404(a), where after dismissal of certain defendants "the only remaining defendants" were corrections officers and other staff at a facility located in a different district).[1]

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claims against Defendants Deal, Owens, Price, Jackson, and Fountain be **DISMISSED** and that Plaintiff's claims against the remaining Defendants be **TRANSFERRED** to the Southern District of Georgia, Dublin Division, for further proceedings.[2]

---

[1] *Nalls* makes clear that before transferring a case *sua sponte*, notice should be given to the Plaintiff. Here, Plaintiff will be furnished notice in the form of the undersigned's Report and Recommendation recommending transfer, to which Plaitniff can object, and any objections will be subject to *de novo* review by the District Judge.

[2] Plaintiff has filed a motion for a protective order [Doc. 5], a motion for an emergency show cause hearing [Doc. 11], and a motion for writ of habeas corpus *ad testificandum* in connection with the motion for a show cause hearing [Doc. 12]. In the motion for protective order, Plaintiff essentially asks for Defendants to "cease and desist" from transferring him in retaliation for this lawsuit, [Doc. 5], and in the emergency motion for a show cause hearing Plaintiff asks for a medical reprieve from his sentence [Doc. 11]. Although he claims that Defendant Hooks threatened to transfer him in retaliation for this lawsuit back in August, he has not shown that irreparable harm is likely if the motion for a protective order is denied, a likelihood that he eventually will succeed on the merits, or that the public interest lies in granting the relief, as is required for injunctive relief. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). Moreover, it is not clear at this stage of the proceedings whether Plaintiff would be entitled to a medical reprieve or if this Court would have the authority to grant such relief. Thus, the Court recommends that the District Court **DENY** these motions [Docs.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 4th day of November, 2014.

$\overline{\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxx}}$
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

5, 11, 12] without prejudice so that he may renew such motions, if warranted, once the case is transferred.

AO 72A
(Rev.8/82)