IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| STEVE H. EZZARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 314-141 |
| | ) |
| DR. AJIBADE and | ) |
| WARDEN BRAD HOOKS, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned civil rights case *pro se*, and has paid the $400.00 filing fee. The matter is before the Court on Defendants' pre-answer motion to dismiss and Plaintiff's motions for a writ of mandamus and to amend his complaint. (Doc. nos. 53, 57, 68.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED**, and that Plaintiff's motions for a writ of mandamus and to amend his complaint be **DENIED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff originally filed this action in the United States District Court for the Northern District of Georgia, naming Defendants located in both the Northern and Southern Districts of Georgia. Because of pleading deficiencies, United States Magistrate Judge Justin S.

Anand directed Plaintiff to file an amended complaint. (Doc. no. 2.) In his first recast complaint, Plaintiff again named Defendants located within the Northern and Southern Districts of Georgia and also failed to cure the previously identified pleading deficiencies, namely failing to include details as to how each named Defendant allegedly violated Plaintiff's constitutional rights. (See doc. nos. 4, 6.) Plaintiff no longer named the Department of Corrections and the State of Georgia as Defendants, and they were terminated from the case. (See doc. no. 4 and doc. entry dated Sept. 2, 2014). Magistrate Judge Anand gave Plaintiff one final opportunity to amend his complaint, and that second recast complaint is the operative pleading in this case. (Doc. no. 7.)

Prior to transferring the case to the Southern District, Magistrate Judge Anand recommended dismissing all but two Defendants from the case because Plaintiff failed to allege the necessary causal connection between the supervisory officials named as Defendants. (Doc. no. 13.) United States District Judge Steve C. Jones adopted that recommendation, without objection from Plaintiff, as the opinion of the District Court, dismissed Defendants Nathan Deal, Brian Owens, Cherie Price, James Jackson, and Lisa Fountain, and transferred Plaintiff's remaining deliberate indifference claims against Defendant Caleb Ajibade and Brad Hooks to the Southern District. (Doc. no. 15.)

Upon the case's arrival in this District, the Court provided Plaintiff with instructions on how to effect service of process on Defendants Ajibade and Hooks, (doc. no. 21), recommended that several motions for injunctive relief and/or a writ of mandamus be denied, (doc. nos. 17, 19, 22, 27, 35), and denied an improper request to file a third recast complaint, (doc. nos. 24, 28). United States District Judge Dudley H. Bowen, Jr., adopted the recommendations for denial of the motions for injunctive relief and/or a writ of mandamus,

(doc. nos. 29, 42), and because of problems with effecting service of process via use of waivers of service of process, directed the United States Marshal to effect personal service on Defendants. (Doc. nos. 50, 52, 64.) Judge Bowen also directed Defendants to pay $308.26 into the Registry of the Court to pay for the cost of personal service. (Doc. no. 65.)

Once service was properly effected, Defendants responded with a pre-answer motion to dismiss, and a motion to stay the proceedings during the pendency of the motion to dismiss. (Doc. nos. 57, 58.) The motion to stay is addressed in a simultaneously filed Order. After granting multiple extensions of time for Plaintiff to respond to the motion to dismiss, an extension which Plaintiff utilized not only to file a response but also to file additional motions, the matter is now ripe for disposition. Two of the three additional motions are addressed, *infra*, and Plaintiff's motion for the appointment of a medical expert is addressed in the same Order ruling on Defendants' motion to stay.

Defendants move to dismiss, arguing (1) Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Ajibade and Hooks, (2) Plaintiff fails to state a claim against either Defendant in their official or individual capacities, (3) and Defendants are entitled to qualified immunity. (See doc. no. 57-1.)

### B. Complaint Allegations

Plaintiff alleges the following facts in his second recast complaint. Plaintiff has not received medical treatment for a period of six years for an unidentified leg condition that has caused him "pain and suffering, loss of mobility, emotional distress, [and] tortuous [sic] infliction of mental and physical pain and suffering."[1] (Doc. no. 7, p. 3.) Plaintiff states that

---

[1] The second recast complaint, which does not contain the details of Plaintiff's injury, superseded and replaced entirely the previous complaints filed by Plaintiff. Krinsk v. SunTrust

3

he needs a knee replacement, leg straightening, and two hernia operations, but he only receives bandages on his leg. (Id. at 5.) Plaintiff asserts that the Veterans' Administration ("VA") has offered to fix his leg, so he wants a medical reprieve that will allow him to be released to the VA, and he wants $35 million in damages. (Id. at 4.)

As to any specific allegations against either named Defendant, Plaintiff asserts that Defendants Hooks and Ajibade, along with three other now-dismissed Defendants, are the "moving force behind the constitutional violation complained of." (Id.) Plaintiff never again mentions Defendant Ajibade, a doctor now-retired from JSP, but does assert that Defendant Hooks, the Warden at JSP, has failed "to provide adequate outside facilities because of cost and budget restraints." (Id. at 5.)

### C. Information on Exhaustion of Administrative Remedies

As to the issue of exhaustion of administrative remedies, Plaintiff states in his second recast complaint that he presented the facts relating to his complaint under JSP's grievance procedure. (Id. at 2.) Plaintiff further explains that he "went all the way through the grievance procedure several times at different institutions," but he was denied medical treatment and then transferred. (Id.) Defendants have produced the affidavits of the persons responsible for overseeing grievance procedures ("Grievance Coordinators") at the last three prisons where Plaintiff has been incarcerated, JSP, Riverbend Correctional Facility ("RCF"), and Calhoun State Prison ("CSP"). (See doc. nos. 57-2 (Williams Aff.), 57-3 (Smith Aff.), 57-4 (Cross Aff.)). None of these Grievance Coordinators have identified any grievance

---

Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011); Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("an amended complaint supersedes the initial complaint and becomes the operative pleading in the case"). However, in response to the motion to dismiss, Plaintiff explains that he injured his leg on a work detail at Calhoun State Prison in June of 2008. (See doc. no. 69.)

filed by Plaintiff concerning medical treatment for a leg injury by Defendants Ajibade or Hooks. (Williams Aff., ¶¶ 13-15; Smith Aff., ¶¶ 14-16 ; Cross Aff. ¶¶ 14-16.)

Specifically, the Grievance Coordinator at CSP, the prison where Plaintiff states he injured his leg in 2008, identified grievance 97865 filed on September 26, 2011, as alleging the medical department denied him surgery on his right knee and leg and his shoes were not "properly up holding." (Cross Aff., ¶ 16 and Ex. B.) The second grievance, number 100555 filed October 11, 2011, alleged the medical department would not provide orthopedic boots because Plaintiff had a soft shoe profile. (Id. ¶ 15 and Ex. B.) Neither grievance was appealed to the Office of the Commissioner. Rather, grievance 97865 was administratively closed at CSP "because it addresses more than one issue," in violation of the applicable grievance procedure. (Id. at Ex. B.) Grievance 100555 was denied at CSP because Plaintiff was not permitted to simultaneously have boots and a soft shoe profile. (Id.)

The Grievance Coordinator at RCF identified two grievances Plaintiff filed. Grievance 435423, dated August 13, 2012, alleged Plaintiff had been "denied/delayed" unspecified medical care because a physician at RCF was "afraid to do surgery." (Smith Aff., ¶ 15 and Ex. B.) The Medical Director of the Georgia Department of Corrections denied the grievance appeal, finding that medical personnel had handled Plaintiff's case appropriately. (Id. at Ex. B.) Grievance 131506, dated September 4, 2012, alleged an unidentified male nurse at RCF had committed an unidentified act of "fabrication" and "malfeasance." (Id. ¶ 16.) That grievance was also denied on appeal because Plaintiff did not provide any details concerning the name of the nurse or which documents had allegedly been fabricated. (Id. at Ex. B.)

5

The Grievance Coordinator at JSP, Plaintiff's current place of incarceration, also identified two grievances Plaintiff filed since his arrival on February 14, 2013. Nearly one year after his arrival, Plaintiff filed grievance 166738 on February 10, 2014, alleging that his medical file contained records of another inmate and that he was prevented from continuing to review his file once he pointed out the incorrect records. (Williams Aff., ¶ 14 and Ex. B.) That grievance was denied on appeal because an investigation revealed that the lab results from the other inmate were removed from Plaintiff's file, and he was then allowed to continue his review. (Id. at Ex. B.) Grievance 187990 filed on December 30, 2014, alleged that a correctional officer at JSP forced Plaintiff to sit on the ground during block movement because he was moving too slowly. (Id., ¶ 15.) That grievance was not appealed and was closed at JSP because the officer denied the allegation. (Id. at Ex. B.)

In response to the motion to dismiss, Plaintiff did not challenge Defendants' contention that he submitted two grievances at CSP and RCF. (Doc. no. 69, p. 4.) However, he asserts that the Grievance Coordinator at JSP submitted false information because he has copies of receipts for four grievances. (Id.) Upon review of the copies submitted, it is apparent that the first two are receipts for the original grievance 166738 and then the appeal of that grievance. (Cf. doc. no. 69, p. 5 with Williams Aff., Ex. B, Grievance 166738.) The third receipt is for the original grievance 187990. (Cf. doc. no. 69, p. 5 with Williams Aff., Ex. B, Grievance 187990.) The fourth receipt is dated August 12, 2015. A grievance submitted on August 12, 2015 would not have been part of the Grievance Coordinator's review at JSP because she signed her affidavit on August 5, 2015. (Williams Aff., p. 4.) In any event, a grievance submitted on August 12, 2015 has no relevance to the issue of

6

whether Plaintiff exhausted his administrative remedies prior to filing his case in July of 2014.

## II. DISCUSSION

As explained below, Defendants' motion to dismiss should be granted based on Plaintiff's failure to properly exhaust his administrative remedies. Because Plaintiff's claims are unexhausted and therefore not properly before the Court, Defendants' other arguments for dismissal will not be addressed.

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so

long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are

8

"plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### B. The Administrative Grievance Procedure

Plaintiff alleges that he has not received treatment for over six years for a leg injury. (Doc. no. 7, p. 3.) Plaintiff's second recast complaint brings claims against two Defendants at JSP, where he has been incarcerated since 2013. (Doc. no. 7; Williams Aff. ¶ 12.) As Defendants point out, (doc. no. 57-1, p. 5), Plaintiff's allegations about medical treatment for a leg injury sustained in 2008 span several years and three different prisons, covering a period that exceeds the permissible statute of limitations. Nevertheless, in making their exhaustion argument, Defendants have presented Plaintiff's grievance history at all three institutions where he has been housed since his injury in 2008.[2] The grievance information covering the time outside the two-year statute of limitations period is presented and utilized only as to an examination of the exhaustion issue, not as an endorsement of the pursuit of any untimely claims. Because of the length of time covered by this grievance history, there are two versions of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that set forth the applicable administrative grievance procedure.

---

[2]State law controls the length of the statute of limitations period in § 1983 actions. Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987). In Georgia, such claims for injuries to the person must be brought within two years of their accrual. Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003). Under § 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Brown, 335 F.3d at 1261 (quoting Rozar v. Mullis, 85 F.3d 556, 561-62 (11th Cir. 1996)).

### 1. SOP IIB05-0001, Effective Date of June 1, 2004

The grievances Plaintiff filed while he was incarcerated at CSP and RCF were subject to the requirements of SOP IIB05-0001 that became effective on June 1, 2004. (See Smith Aff., Ex. A; Cross Aff., Ex. A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Only one issue may be raised in a formal grievance. Id. § VI(C)(4). Once the formal grievance is given to the counselor, the Warden or Superintendent has thirty calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). The grievance

procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

### 2. SOP IIB05-0001, Effective Date of December 10, 2012

The grievances Plaintiff filed while he was incarcerated at JSP were subject to the requirements of SOP IIB05-0001 that became effective on December 10, 2012. (Williams Aff., Ex. A.) Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance by giving it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### C. Plaintiff Failed to Exhaust His Claims Against Defendants Hooks and Ajibade.

Here, Plaintiff's claims should be dismissed because Defendants have met their burden of proving Plaintiff failed to exhaust his available administrative remedies. Plaintiff's grievance history establishes he did not grieve the alleged denial of medical treatment that was based on any decision made by Defendant Hooks or Defendant Ajibade. (See Williams Aff.; Smith Aff.; Cross Aff.) Because Plaintiff did not exhaust his administrative remedies with respect to his claims against these two Defendants prior to initiating this lawsuit, the motion to dismiss should be granted on that basis. Poole, 312 F. App'x at 166; see also Higginbottom, 223 F.3d at 1261.

First, none of the six grievances Plaintiff filed since his injury in 2008 have mentioned Defendants Hooks or Ajibade. Indeed, he did not arrive at JSP, and thus come into contact with either named Defendant, until 2013. "While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim, he is required to 'provide as much relevant information as he reasonably can in the administrative grievance process.'" Williams v. Barrow, 559 F. App'x 979, 986 (11th Cir. 2014) (citing Jones v.

12

Bock, 549 U.S. 199, 219 (2007) and Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Neither of the two grievances filed at JSP prior to the initiation of this lawsuit addressed denial of medical treatment for his leg injury, let alone provided any details of how Defendants Hooks or Ajibade may have been involved in any decisions made about such treatment.

Second, neither of the two grievances Plaintiff filed which do make some mention of medical treatment for Plaintiff's leg, albeit in conclusory fashion, satisfies the exhaustion requirement. Grievance 97865, filed at CSP nearly three years after the 2008 injury, was not appealed to the Office of the Commissioner and did not comply with the requirements for raising only one issue per grievance. See SOP IIB05-0001 §§ VI(C)(4) & VI(D) (eff. June 1, 2004); Cross Aff., Ex. B. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

Grievance 435423, filed nearly five months after his arrival at RCF in 2012, alleged that Plaintiff had been "denied/delayed" unspecified medical care because an unidentified doctor was afraid to perform an unidentified surgery. Although Plaintiff did appeal the denial of that grievance to the Office of the Commissioner, those allegations related to medical treatment administered prior to his arrival at JSP. The grievance filed at RCF did not describe any conduct of Defendants Hooks or Ajibade or otherwise describe a policy of either Defendant that is a "moving force," (doc. no. 7, pp. 4, 5) behind denying Plaintiff the medical treatment he wants. Therefore, that grievance does not satisfy the exhaustion requirement. Williams, 559 F. App'x at 986.

13

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

The Court finds that the grievance process has been available to Plaintiff, and although he has filed two grievances concerning medical treatment for his leg, he has not grieved, let alone exhausted, his current claims against Defendants Hooks and Ajibade. Plaintiff simply did not give the prison grievance procedure a fair opportunity to consider his complaints against Defendants Hooks and Ajibade, specifically, or to evaluate any medical treatment considered, provided, or denied to Plaintiff since his arrival at JSP. Therefore, the motion to dismiss should be granted on exhaustion grounds. See Bryant, 530 F.3d at 1379; Logue v. Chatham Cty. Det. Ctr., 152 F. App'x 781, 783 (11th Cir. 2005) (finding prisoner

14

who sued alleging violations of rights to equal protection and access to the courts based on jail officials' refusal to copy documents did not exhaust equal protection claim when he filed a grievance about non-compliance with copying policy but did not mention race).

### D. Motion to Amend

In addition to filing opposition to Defendants' motion to dismiss, Plaintiff filed a motion requesting permission to file a third recast complaint. (Doc. no. 68.) Although it is clear Plaintiff seeks to add claims against Defendant Hooks, the basis for adding these proposed claims is not entirely clear. Plaintiff mentions both the Americans with Disabilities Act ("ADA") and deliberate indifference under the Eighth Amendment, and he attached a Health Services Request Form showing that as of August 25, 2015, he has a doctor's consultation scheduled. (Id. at 4, 5.)

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely. Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878 (11th Cir. 2013). That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it." Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (quoting Foman, 371 U.S. at 182). In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

Plaintiff's motion to amend is futile and should therefore be denied. As discussed in detail above, Plaintiff has not filed any grievances raising allegations of misconduct against Defendant Hooks. Moreover, Plaintiff's only mention of the ADA in a grievance, number 187990 filed after Plaintiff commenced this lawsuit, alleges a correctional officer at JSP improperly made Plaintiff sit on the ground. (Williams Aff., ¶ 15 and Ex. B.) That grievance makes no mention of the ADA in relation to providing necessary medical care. Whether Plaintiff seeks through his amendment to add to his pending deliberate indifference claims, or whether he seeks to bring a new claim under the ADA, an amended complaint with these proposed claims would be unable to withstand a motion to dismiss because the exhaustion requirement would not be satisfied. Accordingly, the motion to amend should be **DENIED**. (Doc. no. 68.)

### E. Motion for Writ of Mandamus

Lastly, Plaintiff has filed a request for "mandamus" relief, wherein he essentially recounts the facts that are the subject of his complaint, namely that Defendants are refusing to provide him with necessary medical care for a leg injury. (See generally doc. no. 53.) For good measure, he also includes information about problems encountered in effecting service of process on Defendants and alleged impartiality by the undersigned. (Id.) As relief, Plaintiff requests that he be granted a medical reprieve so that he can obtain medical treatment at a hospital run by the VA, or alternatively, that Defendants be ordered to provide him the surgery he wants for his leg. (Id. at 1, 3, 5-6.) Although the filing contains the word "mandamus" in its title, the filing is actually Plaintiff's fourth request for injunctive relief in this case, (doc. nos. 11, 12, 17, 19), and his second improper attempt to obtain mandamus relief, (doc. no. 27.)

As has previously been explained to Plaintiff in detail, (doc. nos. 22, 29), to the extent

Plaintiff seeks injunctive relief, a party moving for such relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to all four of these requirements. First, as discussed in detail above, Plaintiff has not shown a likelihood of success on the merits of his claims because the failure to properly exhaust administrative remedies requires that his case be dismissed. Nor has Plaintiff established that there is a substantial threat he will suffer irreparable injury if the injunction is not granted because there is no medical evidence in the record to evaluate. Plaintiff offers only unsubstantiated allegations and assessments of his medical condition and what kind of treatment he needs. Moreover, Plaintiff attached to his motion to amend a Health Services Request Form showing that as of August 25, 2015, he had a consultation scheduled. (Doc. no. 68, p. 5.) In a subsequent filing, Plaintiff acknowledged that he went to Augusta State Medical Prison on September 1, 2015, and "treatment was recommended for a later date." (Doc. no. 70.) Failure to satisfy any one of the four prerequisites for injunctive relief is fatal to Plaintiff's requests for injunctive relief. See Jefferson Cty., 720 F. 2d at 1519.

17

The Court has also previously explained to Plaintiff that "mandamus" is not the proper vehicle for obtaining a medical reprieve or an order that Defendants provide the surgery Plaintiff wants. (See doc. nos. 35, 42.) The federal statute regarding writs of mandamus, 28 U.S.C. § 1361, provides such relief against only federal officers, employees, or agencies. Moreover, "[m]andamus jurisdiction is appropriate only where (1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief." Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004). Plaintiff has made no showing that Defendant Hooks, the Warden at JSP, and Defendant Ajibade, a doctor now-retired from JSP, individuals who are both state, not federal, actors owe a clear nondiscretionary duty to Plaintiff to release him from prison and/or provide the medical treatment Plaintiff seeks. This is particularly true in the absence of any medical evidence in the record. Plaintiff also has not exhausted all other avenues of relief, because were he to exhaust his claims through the administrative grievance procedure, he would have the option of attempting to pursue a lawsuit in federal court.

Lastly, to the extent Plaintiff complains about the rulings of the undersigned during the course of this case and issues related to service of process, Judge Bowen has repeatedly addressed such complaints. Judge Bowen denied Plaintiff's motion to have the undersigned recused from the case. (Doc. nos. 30-33.) Judge Bowen also ultimately resolved any problems Plaintiff encountered in serving Defendants when he ordered the United States Marshal to effect personal service on June 29, 2015, and taxed the costs of service against Defendants. (See doc. nos. 52, 65.)

In sum, there is no basis for granting the relief Plaintiff seeks by way of his "mandamus" filing, and the motion should be **DENIED**. (Doc. no. 53.)

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** based on Plaintiff's failure to properly exhaust his administrative remedies (doc. no. 57), Plaintiff's motions for a writ of mandamus and to amend his complaint be **DENIED** (doc. nos. 53, 68), judgment be entered in favor of Defendants Hooks and Ajibade, and this case be **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of October, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA